

1  RONALD J. TENPAS
   Acting Assistant Attorney General
2  Environment & Natural Resources Division
   United States Department of Justice

3

4  CHRISTY L. KING
   E-mail: christy.king@usdoj.gov
   Wisconsin Bar Number – 1038373
5  Environmental Enforcement Section
   Environment & Natural Resources Division
6  United States Department of Justice
   P.O. Box 7611
7  Washington, D.C. 20044
   Telephone: (202) 514-1707
8  Facsimile: (202) 514-2583

9  GEORGE S. CARDONA
   United States Attorney for the
10 Central District of California

11 Attorneys for the United States of America

FILED
CLERK, U.S. DISTRICT COURT

AUG 3 0 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION         BY DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

ENTERED
CLERK, U.S. DISTRICT COURT

SEP - 4 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION         BY DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

14

15

16  UNITED STATES OF AMERICA,

17          Plaintiff,

            v.

18

19  PREMIER INDUSTRIES, INC.,

20          Defendant.

Case No.  ED CV 07 - 01092 SGL (OPx)

CONSENT DECREE OF
PLAINTIFF AND DEFENDANT

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

21      **CONSENT DECREE OF PLAINTIFF AND DEFENDANT**

22      Plaintiff United States of America ("United States"), on behalf of the United

23  States Environmental Protection Agency ("EPA"), concurrently with lodging this

24  Consent Decree, has filed a complaint (the "Complaint") in this action pursuant to

25  Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), alleging that

26  Premier Industries, Inc. ("Defendant" or "Premier") violated the CAA and the

27  federally approved California State Implementation Plan ("SIP"), including South

28  Coast Air Quality Management District (the "District") Rule 1175, by operating its

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

expanded polystyrene foam block manufacturing facility in Chino, California (the "Facility") in violation of the emissions limitations and control requirements in Rule 1175, as incorporated in the SIP.

Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

On or about May 1, 2007, the Facility, along with other assets of Defendant, were transferred to Insulfoam LLC, a wholly-owned subsidiary of Premier. Immediately thereafter, Insulfoam LLC ("Insulfoam") was acquired by Carlisle SynTec Incorporated ("Carlisle") a Delaware corporation. Insulfoam is currently a wholly-owned subsidiary of Carlisle.

The United States, Premier and Insulfoam, collectively the "Parties," recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication of any issue of fact or law, and with the consent of the Parties, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331 and 1345.  Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 7413(b), because the violations alleged in the Complaint are alleged to have occurred in this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

2.     For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b) and Rule 1175 of the SIP.

3.     Notice of the commencement of this action has been given to the California Air Resources Board, as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b) and to the District.

## II. APPLICABILITY AND BINDING EFFECT

4.     Insulfoam agrees unconditionally to the jurisdiction of this Court, and to venue in this judicial district and agrees that the Complaint states claims upon which relief may be granted.  Insulfoam further agrees to be bound by the terms and obligations of this Consent Decree, jointly and severally with Defendant, and shall not challenge this Court's jurisdiction to enter and enforce this Consent Decree.  Insulfoam shall be entitled to Defendant's rights and protections that are specifically provided in this Consent Decree.  Any obligation that is imposed upon Defendant in this Consent Decree may be satisfied by Insulfoam and compliance with any such obligation by Insulfoam shall be deemed compliance by Defendant and compliance by Defendant shall be deemed compliance by Insulfoam.

5.     The provisions of this Consent Decree shall apply to and be binding upon the United States, and upon Defendant and Insulfoam, and their respective subsidiaries, divisions, successors and assigns and other entities or persons otherwise bound by law.

6.     Except as provided in Paragraph 4 above, no transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant or Insulfoam of their obligation to ensure that the terms of the Decree are implemented.  At least 30 days prior to any such transfer, Defendant or Insulfoam shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed Title V permit transfer

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

agreement, to EPA Region IX and the United States Department of Justice ("DOJ"), in accordance with Section XV (Notices) of this Decree. Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

7.    Defendant and Insulfoam shall provide a copy of this Consent Decree to their respective officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as any contractor retained to perform work or to provide services required under this Consent Decree. Defendant and Insulfoam shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

8.    In any action to enforce this Consent Decree, neither Defendant nor Insulfoam shall raise as a defense the failure by any of its officers, directors, employees, agents or contractors, or each other, to take any actions necessary to comply with the provisions of this Consent Decree.

### III. DEFINITIONS

9.    Terms used in this Consent Decree that are defined in the CAA or in regulations promulgated pursuant to the CAA shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

A.    "Advanced RTO Control Technology" shall mean any emission control technology that may be demonstrated after the Effective Date of this Consent Decree to comply with Rule 1175, and which may be subject to testing pursuant to Paragraph 19.

B.    "Bead Aging Operation" shall mean the enclosure at the Facility where expanded beads (pre-puff) are transferred to and kept for stabilization and drying;

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

C.    "Complaint" shall mean the complaint filed concurrently by the United States with the lodging of this Consent Decree;

D.    "Consent Decree" or "Decree" shall mean this Decree;

E.    "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day;

F.    "Defendant" shall mean Premier Industries, Inc.  Unless otherwise provided, references to "Defendant" in Sections V through XXII of this Consent Decree shall be deemed and interpreted to also include Insulfoam;

G.    "Demonstrated Compliant Bead" shall mean raw EPS (expandable polystyrene) bead with a pentane content less than or equal to 3.6% by weight;

H.    "Effective Date" shall mean the date upon which this Decree is entered by the Court;

I.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

J.    "Facility" shall mean the EPS manufacturing and processing facility located at 5635 Schaefer Avenue in Chino, San Bernardino County, California, formerly owned and operated by Premier and currently owned and operated by Insulfoam;

K.    "Manufacturing Emissions" shall mean any emissions of VOC that occur during the Manufacturing Operation;

L.    "Manufacturing Operation" shall mean every step of the processing of an expandable polystyrene product from the delivery of

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

the raw material until, but not including, the storage of the final product;

M.   "Newly-Identified EPS Bead" or "NIEPS Bead"  shall mean any EPS bead with a pentane content greater than 3.6% by weight, that may be demonstrated after the Effective Date of this Consent Decree to comply with Rule 1175 and which may be subject to testing pursuant to Paragraph 19;

N.   "Non-Demonstrated Compliant Bead" shall mean raw EPS bead with a pentane content greater than 3.6% by weight, and that is not Newly-Identified EPS Bead;

O.   "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

P.   "Parties" shall mean the United States, Premier and Insulfoam;

Q.   "RTO" shall mean the regenerative thermal oxidizer system installed at the Facility for the purpose of controlling Manufacturing Emissions and which is identified as SSE-8-4K-95X-RTO, natural gas fired, 2MMBTU;

R.   "Rule 1175" shall mean District Rule 1175 as amended by the District in 1994 and approved by EPA into the SIP in 1994;

S.   "Section" shall mean a portion of this Decree identified by a Roman numeral;

T.   "United States" shall mean the United States of America, acting on behalf of EPA;

U.   "VOC" shall mean volatile organic compound.

## IV.  CIVIL PENALTY

10.   Within 30 days after the Effective Date of this Consent Decree, Defendant shall pay a civil penalty to the United States of $326,000, together with

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

1 interest accruing from the date on which the Consent Decree is lodged with the

2 Court, at the rate specified pursuant to 28 U.S.C. § 1961 as of the date of lodging.

3    11.    Defendant shall pay the civil penalty due by FedWire Electronic

4 Funds Transfer ("EFT") to the United States Department of Justice in accordance

5 with written instructions to be provided to Defendant, following lodging of the

6 Consent Decree, by the Financial Litigation Unit of the United States Attorney's

7 Office for the Central District of California.  At the time of payment, Defendant

8 shall send a copy of the EFT authorization form and the EFT transaction record,

9 together with a transmittal letter, which shall state that the payment is for the civil

10 penalty owed pursuant to the Consent Decree in United States v. Premier

11 Industries, Inc., and shall reference the civil action number and DOJ case number

12 90-5-2-1-08413, to the United States in accordance with Section XV (Notices) of

13 this Decree and by e-mail to acctsreceivable.CINWD@epa.gov; and to:

14    EPA Cincinnati Finance Office
     26 Martin Luther King Drive
15    Cincinnati, Ohio 45268.

16    12.    Defendant shall not deduct the civil penalty paid under this Section in

17 calculating its federal income tax.

18    **V.  COMPLIANCE**

19    13.    Not later than August 1, 2007, Defendant shall comply with Rule 1175

20 with respect to the Facility, including, but not limited to, the demonstration

21 requirements of Rule 1175(c)(2) and the plan submission requirements of

22 Rule 1175(c)(3).

23    **VI.  INJUNCTIVE RELIEF**

24    14.    Beginning no later than the date of lodging and continuing until

25 termination of this Consent Decree, Defendant shall:

26    A.    At all times during the Manufacturing Operation,

27    continuously operate the Facility's RTO at a set point temperature of at

28    least $1570^0$ F.  The RTO operating temperature shall be continuously

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

monitored and recorded.  Such recorded results shall include, but not be limited to, circular chart recordings containing the oxidizing chamber operating temperature for the RTO.  The circular chart recordings shall clearly indicate the dates and times of continuous temperature recordings, and each individual chart recording shall be for a maximum of seven consecutive calendar days.

B.    At all times when there are beads present in the Bead Aging Operation, maintain the air temperature in the Bead Aging Operation of the Facility at a 24 hour average temperature of no less than $85^0$ F.  The air temperature in the Bead Aging Operation shall be continuously monitored and results recorded.  Such recorded results shall include, but not be limited to, electronic recordings of the operating temperature for the Bead Aging Operation.  The temperatures will be measured and recorded no less frequently than hourly, and the electronic recordings shall clearly indicate the dates and times of each temperature measurement.

C.    1) At all times when there are beads present in the Bead Aging Operation, maintain the Bead Aging Operation at a negative pressure that complies with EPA Method 204 requirements for a Permanent Total Enclosure (0.013 mm Hg or 0.007 inches of water ).

2) In addition, Defendant shall continuously operate fixed magnehelic gauges designated as, the Silver Tank magnehelic and the Blue Tank magnehelic and achieve the following minimum negative pressure limits (with an allowable variance of +0.5 inches of water) during all times that a pre-expander and/or a block mold is in operation:

     1.  Silver Tank magnehelic: -1.0  inches of water

     2.  Blue Tank magnehelic: -1.0  inches of water.

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

Defendant shall continuously operate the Booster Blower magnehelic and achieve the following minimum negative pressure limit (with an allowable variance of +0.5 inches of water) during all times that a pre-expander and/or a block mold is in operation and/or when there are beads present in the Bead Aging Operation:

Booster Blower magnehelic: -1.0 inches of water.

During the times that a magnehelic is required to be operated, Defendant shall monitor negative pressure readings of the magnehelic once daily, by manually reading and recording, or by electronically recording, the magnehelic every 10 seconds for a 5 minute period. The 10 second magnehelic readings shall be averaged and the result recorded as a 5 minute average. Defendant shall maintain records of the daily 5 minute average readings for each magnehelic. These recordings shall clearly indicate the date and time of each set of magnehelic readings. Defendant shall also determine monthly the accuracy of the magnehelics with an electronic manometer that measures the static pressure at a second port located adjacent to the magnehelic's port. Any magnehelic that shows a static pressure deviation from the electronic manometer of greater than 10% must be immediately removed and replaced. Records of all accuracy testing, removal and replacement of magnehelics shall be maintained. The records shall be signed by the person conducting the testing and the person removing or replacing the magnehelics.

15.   Beginning no later than the date of lodging of this Consent Decree and continuing through July 31, 2007, Defendant shall process no more than 25,000 pounds per day of Non-Demonstrated Compliant Bead. Any Non-Demonstrated Compliant Bead that Defendant processes pursuant to this paragraph shall not exceed a maximum pentane content of 4.7%.

16.    Beginning, no later than the date of lodging of this Consent Decree and continuing through July 31, 2007, Defendant shall process no more than 80,000 pounds per month of Non-Demonstrated Compliant Bead.  Any Non-Demonstrated Compliant Bead that Defendant processes pursuant to this paragraph shall not exceed a maximum pentane content of 4.7%.

17.    Beginning on or before August 1, 2007, and continuing through the date of termination of this Consent Decree, Defendant shall process only Demonstrated Compliant Bead at the Facility, except to the extent that Defendant is required by the District to employ Non-Demonstrated Compliant Bead in the conduct of a source test or other compliance demonstration for purposes of periodically demonstrating Defendant's compliance with Rule 1175, or as provided in Paragraph 19.

18.    No later than August 1, 2007 and continuing through the date of termination of this Consent Decree, Manufacturing Emissions and all post-manufacturing emissions of VOC shall be less than 2.4 lbs per 100 lbs of raw material processed.  To determine the emissions, it shall be assumed that all "blowing agent" (the liquid, gaseous or solid material that facilitates the formation of a cellular product from raw polymeric material) is released from the product, and a mass balance equation shall be used.  If the residual pentane, the amount contained in the final product, is or exceeds 2.4 lbs per 100 lbs of raw material, then the Facility is out of compliance.  If the amount of residual pentane is less than 2.4 lbs per 100 lbs of raw material, then all uncontrolled emissions (e.g. those not captured and destroyed during the Manufacturing Operation) shall be added to the residual pentane to determine if the emissions are less than 2.4 lbs per 100 lbs of raw material.

19.    If during the pendency of this Consent Decree, there is identified an NIEPS Bead or Advanced RTO Control Technology ("Advanced RTO Technology") that may ensure compliance with this Consent Decree and Rule

- 10 -

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

1175, the Parties agree to the following testing protocol to determine whether the NIEPS Bead or Advanced RTO Technology may be used in lieu of Demonstrated Compliant Bead under Rule 1175 and this Consent Decree. Defendant may, upon submission of a test plan and written approval by EPA Region IX, conduct a test in compliance with the approved test plan to ensure compliance with Rule 1175 and this Consent Decree.

Prior to conducting any such tests, Defendant shall provide to the District, EPA Region IX and DOJ, pursuant to Section XV (Notices), a test plan setting forth Defendant's reasonable and substantiated basis for its belief that the NIEPS Bead or Advanced RTO Technology will comply with this Decree and Rule 1175. The test plan shall set-forth the purpose of the test, the testing parameters, including but not limited to, duration of the test, the operating parameters and conditions, and the bead type to be used. Testing shall include all of the operating parameters necessary to comply with Rule 1175.

Defendant may not conduct testing with NIEPS Bead or of an Advanced RTO Technology unless and until it receives written approval from the Director of the Air Division, Region IX. Defendant shall conduct testing approved by EPA consistent with the parameters articulated in Defendant's test plan, if approved by EPA, or consistent with alternate parameters as set-forth by EPA in its approval.

Within 30 days of testing, Defendant shall submit the following information to EPA Region IX and DOJ pursuant to Section XV (Notices): 1) test results from the approved testing, which document, at a minimum: the emissions that occurred during testing, the RTO operating parameters, including temperature, and the Bead Aging Operation air temperature and negative pressure, 2) the amount of EPS bead processed and the pentane content, 3) the duration of the testing, and 4) any non-compliance with the Decree or Rule 1175 which occurred during the testing. Defendant shall maintain records of all such tests in accordance

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

with the provisions of Section VIII.  Provided that Defendant complies fully with the provisions of this Paragraph 19, Defendant shall not be liable for stipulated penalties for a violation of this Consent Decree that occurs during and is directly related to approved testing of NIEPS Bead or Advanced RTO Technology.

20.    If, during the duration of this Consent Decree and pursuant to the above Paragraph 19, EPA determines that there exists NIEPS Beads or Advanced RTO Technologies that would achieve compliance with Rule 1175 and this Decree, Defendant may, pursuant to Section XVIII (Modification) pursue a modification of this Consent Decree.

21.    Defendant shall at all times after termination of this Consent Decree comply with all applicable requirements in the CAA and Rule 1175.

## VII.  REPORTING REQUIREMENTS

22.    Defendant shall submit the following reports; each report submitted under this Section shall be signed by a responsible official of Defendant, as defined at 40 C.F.R. § 70.2, and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

23.    This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

24.     Within 30 days of the Effective Date of this Decree, Defendant shall submit a progress report to the United States pursuant to Section XV (Notices). The report shall document Defendant's actual usage of Non-Demonstrated Compliant Bead at the Facility for the preceding 60 days. The report shall also detail each instance of non-compliance with the requirements of Sections V (Compliance) and VI (Injunctive Relief), and shall summarize the status of Defendant's efforts to achieve full compliance with Rule 1175.

25.     Not later than 15 days following the end of each calendar month, subsequent to the calendar month (the later of the two) reported upon as required by Paragraph 24, and until Defendant's Request for Termination under Paragraph 91 is approved, Defendant shall submit a report to the United States, pursuant to Section XV (Notices). The report shall document Defendant's actual usage of Non-Demonstrated Compliant Bead at the Facility for the preceding calendar month, and shall include the reason for usage of Non-Demonstrated Compliant Bead and the date, type and amount used. The report shall also detail each instance of non-compliance with the requirements of Sections V (Compliance) and VI (Injunctive Relief) during the preceding calendar month, and shall summarize the status of Defendant's efforts to achieve full compliance with Rule 1175.

26.     Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify the EPA representative listed in Section XV (Notices) orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraphs.

27.     All reports shall be submitted to the persons designated in Section XV (Notices) of this Decree.

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

28.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CAA or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

29.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII. RECORDS

30.     In addition to the requirements of Paragraphs VI (Injunctive Relief) and VII (Reporting Requirements), Defendant shall maintain records and provide copies to EPA if requested to do so.  The records maintained shall include the following information:

> A.     The quantity of Non-Demonstrated Compliant Bead used on both a daily and monthly basis; and

> B.     A recordation of the data required by Paragraph 14.

31.     If requested by EPA the information required pursuant to the preceding Paragraph 30 shall be compiled in a comprehensible and chronologically ordered, single record or in one record listing Non-Demonstrated Compliant Bead use and a separate record documenting the RTO temperature, Bead Aging Operation air temperature and negative pressure and the manometer test results and action taken on the magnehelics.

32.     Pursuant to 1175(e), Defendant shall maintain daily records of operations which include at least the following information:  the amount of raw material processed, the equipment used, and the type of blowing agent used.

33.     Defendant shall allow EPA personnel to enter into the Facility at all reasonable times without prior notice for the purpose of taking samples, conducting tests, observing operations, or reviewing records required to be kept pursuant to

- 14 -

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

1   this Consent Decree.  This provision in no way limits or otherwise affects any right

2   of entry held by EPA pursuant to applicable federal laws, regulations, or permits.

3                        **IX.  STIPULATED PENALTIES**

4        34.    Defendant shall be liable for stipulated penalties to the United States

5   for violations of this Consent Decree as specified below, unless excused under

6   Section X (Force Majeure).  A violation includes failing to perform any obligation

7   required by the terms of this Decree according to all applicable requirements of this

8   Decree and within the specified time schedules established by or approved under

9   this Decree.

10       35.    Defendant shall notify EPA in writing of any failure to meet Consent

11  Decree requirements for which stipulated penalties may be due as soon as it has

12  knowledge of such failure.  In addition, the United States may identify stipulated

13  penalties based on any information it acquires.

14       36.    For each of the instances listed below, upon written demand of the

15  United States, Defendant shall pay the following stipulated penalties in the

16  following amounts:

17       37.    Failure to pay the civil penalty required to be paid under Section IV

18  (Civil Penalty) of this Decree when due:  $ 1,000 per day for each day that payment

19  is late.

20       38.    For each failure to comply with the requirements of Section V

21  (Compliance) or Paragraphs 17 or 18:  $ 3,000 per violation/per day.

22       39.    For each day in which Defendant fails to comply with the EPS bead

23  limitations set forth in Paragraph 15:  $ 3,000 per violation/per day.

24       40.    For each month in which Defendant fails to comply with the EPS bead

25  limitations set forth in Paragraph 16:  $ 5,000 per violation/per month.

26       41.    For each failure to comply with Paragraph 14:

27              A.    For each failure to operate as required by Paragraph 14:

28                    $2,200 per violation/per day.

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

B.   For each failure to record information as required by Paragraph 14: $2,000 per violation/per day.

C.   For each failure to test, replace or remove a magnehelic as required by Paragraph 14: $2,500.

42.   For each violation of Paragraph 19: $2,000 per violation/per day.

43.   For each failure to submit or create a report as required by Paragraph(s) 22-25:

| Per Violation/Per Day | Period of Noncompliance |
|---|---|
| $   500 | 1st through 14th day |
| $   1,000 | 15th through 30th day |
| $   1,500 | 31st day and beyond |

44.   For each failure to create, maintain or submit records as required by Paragraph(s) 30-32: $ 2,000 per violation.

Accrual of Stipulated Penalties

45.   Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Penalties shall accrue regardless of whether EPA has notified Defendant of a violation.

46.   Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

47.   Defendant shall pay any stipulated penalty within 10 days of receiving the United States' written demand.

48.   Stipulated penalties shall continue to accrue as provided in Paragraph 45, during any Dispute Resolution, but need not be paid until the following:

A.   If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

penalties determined to be owing, together with interest, to the United States within 10 days of the effective date of the agreement or the receipt of EPA's decision or order.

B.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in Subparagraph C, below.

C.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 10 days of receiving the final appellate court decision.

49.     Unless otherwise provided in this Consent Decree, obligations of Defendant under the provisions of this Consent Decree after the signing, but prior to the Effective Date, shall be legally enforceable from the date this Consent Decree is signed by Defendant.  Liability for stipulated penalties, if applicable, shall accrue for violations of such obligations and payment of such stipulated penalties may be demanded by the Plaintiff as provided in Paragraphs 45 and 47 of the Decree.

Payment of Stipulated Penalties

50.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

51.     Defendant shall not deduct stipulated penalties paid under this Section in calculating its federal income tax.

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

52.   If Defendant fails to pay stipulated penalties according to the terms of this Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.

53.   Nothing in this paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

54.   Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights) of this Consent Decree, the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Decree or applicable law.

## X.  FORCE MAJEURE

55.   "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Decree despite Defendant's best efforts to fulfill the obligation.  "Best efforts" include anticipating any potential Force Majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

56.   Defendant shall provide notice orally or by electronic or facsimile transmission as soon as possible, but not later than 72 hours after the time Defendant first knew of, or by the exercise of due diligence, should have known of, a claimed Force Majeure event.  Defendant shall also provide written notice, as provided in Section XV (Notices) of this Decree, within 7 days of the time Defendant first knew of, or by the exercise of due diligence, should have known of, the event.  The notice shall state the anticipated duration of any delay; its cause(s);

- 18 -

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

Defendant's past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and Defendant's rationale for attributing any delay to a Force Majeure event.  Failure to provide oral and written notice as required by this Paragraph shall preclude Defendant from asserting any claim of Force Majeure.

57.    If the United States agrees that a Force Majeure event has occurred, the United States may agree to extend the time for Defendant to perform the affected requirements for the time necessary to complete those obligations.  An extension of time to perform the obligations affected by a Force Majeure event shall not, by itself, extend the time to perform any other obligation.

58.    If the United States does not agree that a Force Majeure event has occurred, or does not agree to the extension of time sought by Defendant, the United States' position shall be binding, unless Defendant invokes Dispute Resolution under Section XI (Dispute Resolution) of this Consent Decree.  In any such dispute, Defendant bears the burden of proving, by a preponderance of the evidence, that each claimed Force Majeure event is a Force Majeure event, that Defendant gave the notice required by Paragraph 56, that the Force Majeure event caused any delay Defendant claims was attributable to that event, and that Defendant exercised best efforts to prevent or minimize any delay caused by the event.

## XI. DISPUTE RESOLUTION

59.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

Informal Dispute Resolution

1

2     60.   Any dispute subject to Dispute Resolution under this

3 Consent Decree shall first be the subject of informal negotiations. The dispute

4 shall be considered to have arisen when Defendant sends the United States a

5 written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in

6 dispute. The period of informal negotiations shall not exceed 20 days from the

7 date the dispute arises, unless that period is modified by written agreement. If the

8 Parties cannot resolve a dispute by informal negotiations, then the position

9 advanced by the United State shall be considered binding unless, within 15 days

10 after the conclusion of the informal negotiation period, Defendant invokes formal

11 dispute resolution procedures as set forth below.

12    Formal Dispute Resolution

13     61.   In any dispute under this Section that is not resolved

14 informally, Defendant shall invoke formal dispute resolution procedures, within the

15 time period provided in the preceding Paragraph, by serving on the United States,

16 in accordance with Section XV (Notices), a written Statement of Position on the

17 matter in dispute, including any supporting factual data, analysis, opinion, or

18 documentation.

19     62.   Within 45 days after receipt of Defendant's Statement of

20 Position, EPA will serve on Defendant its Statement of Position, including any

21 supporting factual data, analysis, opinion, or documentation. Within 15 days after

22 receipt of EPA's Statement of Position, Defendant may submit a reply.

23     63.   An administrative record of the dispute shall be

24 maintained by EPA and shall contain all Statements of Position, including

25 supporting documentation, submitted pursuant to this Paragraph. Where

26 appropriate, EPA may allow submission of supplemental statements of position by

27 the Parties to the dispute.

28

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

64.   A designated individual at EPA Region IX, will issue a final decision resolving the matter in dispute. The decision of this individual shall be binding upon Defendant, subject only to the right to seek judicial review, in accordance with the following Paragraph.

65.   Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV (Notices) of the Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within 15 days of receipt of EPA's decision pursuant to the preceding Paragraph. The motion shall contain Defendant's written Statement of Position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Decree.

66.   The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

67.   In any proceeding to review a decision of EPA, Defendant shall have the burden of demonstrating that the decision is arbitrary and capricious or otherwise not in accordance with law. Judicial review of such decision shall be on the administrative record compiled in accordance with Paragraph 63.

68.   The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 48. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

## XII.  INFORMATION COLLECTION AND RETENTION

69.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility at all reasonable times, upon presentation of official credentials, to:

    A.    monitor the progress of activities required under this Decree;

    B.    verify any data or information submitted to the United States in accordance with the terms of this Decree;

    C.    obtain documentary evidence, including photographs and similar data; and

    D.    assess Defendant's compliance with this Decree.

70.    Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

71.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA at the address and to the person identified as the EPA contact in Section XV (Notices).

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

72.     Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Decree shall be withheld on grounds of privilege.

73.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

74.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

75.     This Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action and the June 30, 2004 Finding and Notice of Violation (Docket No. R9-04-09) issued by EPA, through the date of lodging of this Consent Decree. This Consent Decree also resolves any civil claims the United States may have against the officers, directors, and employees of Premier for the violations alleged in the Complaint or in the June 30, 2004 Finding and Notice of Violation, but only to the extent said officers,

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

directors, and employees were acting in their official capacity as officers, directors, and employees, and only as to the actions of Premier as described in said Complaint and Finding and Notice of Violation.

76.   The United States reserves all legal and equitable remedies available to enforce the provisions of this Decree, except as expressly stated in Paragraph 75.

77.   This Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA, implementing regulations, the California SIP or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 75.

78.   The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

79.   This Decree is not a permit, or a modification of any permit, under any federal, State or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits.

80.   The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Decree will result in compliance with provisions of the CAA or Rule 1175, or with any other provisions of federal, State, or local laws, regulations, or permits.

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

81.    This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

82.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV.  COSTS

83.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XV.  NOTICES

84.    Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

DOJ

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611
Re:  DOJ No. 90-5-2-1-08413

and

EPA, REGION IX

Director, Air Division
Attention: Air-5
United States Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA 94105

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

To Premier:

Michael R. Wall
President
Premier Industries, Inc.
11126 Vipond Dr. NW
Gig Harbor, WA  98329

and

Harry Edward Grant
Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, WA  98154

To Insulfoam:

Carlisle SynTec Incorporated
c/o Carlisle Companies Incorporated
13925 Ballantyne Corporate Place
Suite 400
Charlotte, NC 28277
Attention:  Scott C. Selbach

and

Donna Diamond
Weston Benshoof Rochefort Rubalcava MacCuish LLP
333 South Hope Street
Sixteenth Floor
Los Angeles, CA  90071

85.     Any Party may, by written notice to the other Parties,

change its designated notice recipient or notice address provided above.

86.     Unless otherwise agreed to by the Parties in writing,

notifications and submissions to or communications with the United States shall be

deemed submitted on the date they are postmarked and sent either by overnight

receipt mail service or by certified or registered mail, return receipt requested.

## XVI.  EFFECTIVE DATE

87.     The Effective Date of this Decree shall be the date upon

which this Decree is entered by the Court.

## XVII.  RETENTION OF JURISDICTION

88.     The Court shall retain jurisdiction over this case until

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

1  termination of this Decree, for the purpose of resolving disputes arising under this

2  Decree or entering orders modifying this Decree, pursuant to Sections XI (Dispute

3  Resolution) and XVIII (Modification), or effectuating or enforcing compliance

4  with the terms of this Decree.

## XVIII. MODIFICATION

6      89.    The terms of this Consent Decree may be modified only by

7  a subsequent written agreement signed by all the Parties.  Where the modification

8  constitutes a material change to this Decree it shall be effective only upon approval

9  by the Court.

10      90.    Any disputes concerning modification of this Decree shall

11  be resolved pursuant to Section XI (Dispute Resolution) of this Decree, provided,

12  however, that, instead of the burden of proof provided by Paragraph 67, the Party

13  seeking the modification bears the burden of demonstrating that it is entitled to the

14  requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX. TERMINATION

16      91.    After Defendant has completed the requirements of

17  Sections V, VI and VII (Compliance), (Injunctive Relief) (Reporting

18  Requirements) of this Decree and has thereafter maintained continuous satisfactory

19  compliance with this Decree for a period of two years and has paid the civil penalty

20  as required by Section IV (Civil Penalty), any accrued stipulated penalties required

21  by Section IX (Stipulated Penalties) and any enforcement expenses required by

22  Section XIV (Costs) of this Decree, Defendant may serve upon the United States a

23  Request for Termination stating that Defendant has satisfied all conditions for

24  termination as set forth above, together with all necessary supporting

25  documentation.

26      92.    Following receipt by the United States of Defendant's Request for

27  Termination, the Parties shall confer informally concerning the Request and any

28  disagreement that the Parties may have as to whether Defendant has satisfactorily

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

1  complied with the requirements for termination of this Consent Decree. If the
2  United States agrees that the Decree may be terminated, the Parties shall submit,
3  for the Court's approval, a joint stipulation terminating the Decree.

4      93.    If the United States does not agree that the Decree may be
5  terminated, Defendant may invoke Dispute Resolution under Section XI (Dispute
6  Resolution) of this Decree. However, Defendant shall not seek Dispute Resolution
7  of any dispute regarding termination under Paragraph 61 of Section XI (Dispute
8  Resolution), until 45 days after service of its Request for Termination.

9  ## XX. PUBLIC PARTICIPATION

10      94.    This Consent Decree shall be lodged with the Court for a
11  period of not less than 30 days for public notice and comment in accordance with
12  28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its
13  consent if the comments regarding the Consent Decree disclose facts or
14  considerations indicating that the Consent Decree is inappropriate, improper, or
15  inadequate.

16      95.    Defendant consents to entry of this Consent Decree
17  without further notice and agrees not to withdraw from or oppose entry of this
18  Consent Decree by the Court or to challenge any provision of the Decree, unless
19  the United States has notified Defendant in writing that it no longer supports entry
20  of the Decree.

21  ## XXI. SIGNATORIES/SERVICE

22      96.    Each undersigned representative of Defendant and the
23  Assistant Attorney General for the Environment and Natural Resources Division of
24  the Department of Justice certifies that he or she is fully authorized to enter into the
25  terms and conditions of this Decree and to execute and legally bind the Party he or
26  she represents to this document.

27      97.    This Consent Decree may be signed in counterparts, and
28  its validity shall not be challenged on that basis.

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

98.     Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

99.     Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process with respect to the Complaint and all matters arising under or relating to this Consent Decree.

## XXII. INTEGRATION

100.   This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIII. FINAL JUDGMENT

101.   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Premier.

IT IS SO ORDERED and ENTERED.

DATED: _8-29-07._

_____

UNITED STATES DISTRICT JUDGE

STEPHEN G. LARSON

UNITED STATES DISTRICT JUDGE

- 29 -

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

1  FOR PLAINTIFF UNITED STATES OF AMERICA:

2

3  *[signature]*

4  ELLEN MAHAN

5  Deputy Section Chief
   Environment and Natural Resources Division
6  United States Department of Justice

7

8  _____

9  Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE OF PLAINTIFF AND
                                                DEFENDANT

FOR PREMIER INDUSTRIES, INC.:

_____

_____
Date

If different from above, the following is the name and address of Premier's agent for service of process, and the name and address of Premier's counsel.  Counsel may act as agent for service.

Agent for Service:

Name Harry Edward Grant
Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, WA  98154
Address

Attorney:

Name  Stephen E. Hyam
Clark & Trevithick
800 Wilshire Blvd., 12th Flr.
Los Angeles, CA 90017
Address

Attorney:

Name Harry Edward Grant
Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, WA  98154

_____
Address

- 31 -

CONSENT DECREE OF PLAINTIFF AND
DEFENDANT

THE UNDERSIGNED, as provided in Paragraph 4 hereof, agrees to the terms of this Consent Decree in the matter of *United States of America v. Premier Industries, Inc.* (C.D. Ca.), relating to the Facility at 5635 Schaefer Avenue, Chino, San Bernardino County, California:

FOR INSULFOAM LLC:

_____  Chief Financial Officer

July 9, 2007
_____
Date

If different from above, the following is the name and address of Insulfoam's agent for service of process, and the name and address of Insulfoam's counsel. Counsel may act as agent for service.

Agent for Service:                              Attorney:

_____          _____
Name                                              Name Donna Diamond
                                                      Weston, Benshoof, et al.
                                                      333 S. Hope St., 16th Floor
                                                      Los Angeles, CA 90071
_____          _____
Address                                          Address

CONSENT DECREE OF PLAINTIFF AND DEFENDANT

1

For the U.S. Environmental Protection Agency:

2

3

4    Dated: 7/20/07                    *Keith Taka*

5                                      WAYNE NASTRI
                                       Regional Administrator
6                                      U.S. Environmental Protection Agency,
                                       Region IX
7                                      San Francisco, CA 94105

8

9    Dated: 7/20/07

10                                     GRANTA Y. NAKAYAMA
                                       Assistant Administrator
11                                     Office of Enforcement and Compliance Assurance
                                       U.S. Environmental Protection Agency
12                                     Washington, D.C.

13

14

15   Of COUNSEL:                       ANN LYONS
                                       Assistant Regional Counsel
16                                     U.S. Environmental Protection Agency,
                                       Region IX
17                                     San Francisco, CA 94105

18

19

20

21

22

23

24

25

26

27

28                                     - 33 -

# CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2007 I mailed by Federal Express the foregoing Consent Decree of Plaintiff and Defendant to the Clerk of the Court. I further certify that on August 27, 2007 I mailed the foregoing document by first-class mail to the following:

Agent for Service for Premier Industries, Inc.
Harry Edward Grant
Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154

Agent for Service for Insulfoam LLC
Donna Diamond
Weston, Benshoof, et al.
333 S. Hope St., 16th Floor
Los Angeles, CA 90071

Counsel for Environmental Protection Agency
Ann Lyons
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street, ORC-2
San Francisco, CA 94105

By: _Christy King_
CHRISTY L. KING
E-mail:     Christy.King@usdoj.gov
Wisconsin Bar Number: 1038373
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, DC  20044
Telephone:  (202) 514-1707
Facsimile:   (202) 514-2583